UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LESLIE BROOKS SWARTOUT,

        Plaintiff,                                  Case No. 1:08-cv-927

v.                                                  Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's claim challenging the revocation of his parole will be dismissed without prejudice. Plaintiff's remaining claims will be dismissed for failure to state a claim.

**Discussion**

      I.        Factual allegations

Plaintiff currently is incarcerated at the Parr Highway Correctional Facility (ATF), but the events giving rise to his complaint occurred while he was incarcerated at the West Shoreline Correctional Facility (MTF). In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC), MDOC Director Patricia Caruso, MTF Warden Mary Berghuis, MTF Inspector Terry Stewert and the following ATF employees: Warden Thomas Bell; Deputy Wardens William Rey and L. McRoberts; Assistant Deputy Warden Paul Deleeuw; Inspector R. Goldberg; and Assistant Resident Unit Supervisor (unknown) Woodard.

Plaintiff claims that the parole board issued a decision granting his parole on March 15, 2007, with a scheduled release date of September 11, 2007. On August 1, 2007, a personal protection order (PPO) was entered that prohibited Plaintiff from having contact with his parents, Alice and Leslie B. Swartout, Sr. The PPO was included as a stipulation of Petitioner's parole. Stipulation of Parole 4.5 stated: "You must not have verbal, written, electronic or physical contact either directly or through another person and you must not be within 500 Ft. of their residence school, or place of employment of; Alice and Leslie B. Swartout." (Compl., 5, docket #1.) Plaintiff alleges that Defendant Stewert filed a report with the parole board stating that Petitioner violated the PPO and the conditions of his parole by making a phone call to his parents from the prison on September 5, 2007. As a result of Stewert's report, the parole board suspended and later revoked Plaintiff's parole.

Plaintiff contends that Defendant Stewert prepared the report to the parole board without conducting a full investigation. Plaintiff argues that the parole stipulation did not apply to him until he was released on parole. Plaintiff also attacks the validity of the PPO, claiming that it

was obtained by his sister under false pretenses. Plaintiff claims that his mother did not consent to the PPO and was unaware of its existence. While Plaintiff was aware of the PPO, he argues that prison officials failed to inform him that he could not make phone calls to his parents from prison or that he was prohibited from having visits with his parents at the prison. According to Plaintiff, his mother visited him eight times in prison and accepted four phone calls from him after August 1, 2007. His mother last visited him in prison on September 4, 2007, the day before Defendant Stewert reported Plaintiff for making the phone call.

Defendant Stewert also issued a Notice of Intent to revoke Plaintiff's phone privileges. Plaintiff requested an administrative hearing, but was transferred to ATF before a hearing was held. Because a hearing was not held within fourteen days as required by MDOC policy, Plaintiff contends that the NOI was invalid and he could resume making phone calls. When Plaintiff arrived at ATF on October 1, he attempted to place a phone call. On October 4, Defendant Goldberg issued another NOI and charged Plaintiff with a major misconduct for attempting to make the phone call. Plaintiff claims that he did not receive a timely hearing on the NOI. When a hearing finally was held, Plaintiff's phone privileges were permanently restricted. Plaintiff claims that the NOIs written by Defendants Stewert and Goldberg also resulted in two major misconduct tickets for which he was convicted.

Plaintiff further claims that Defendant Goldberg interfered with his right of access to the courts. Plaintiff claims that he commenced proceedings to terminate the PPO. Plaintiff attempted to serve the documents by putting them in envelopes marked "legal mail." Plaintiff claims that Defendant Goldberg reviewed the mail in Plaintiff's presence. Plaintiff showed Goldberg a letter from the clerk of the court instructing Plaintiff to serve the respondents. Goldberg allegedly

responded, "I don't care what the Courts have to say and will do whatever I want to." (Compl., 11.) According to Plaintiff, those legal documents never got served, which caused a delay in the proceedings.

Plaintiff claims that on December 21, 2007, he received his Parole Eligibility Report (PER) prepared by Defendant Woodard. Plaintiff found several pieces of inaccurate information in the PER, which he reported it to Woodard. Woodard told Plaintiff that he would correct the errors, but failed to do so. Woodard then told Plaintiff that it was Plaintiff's responsibility to explain the technical error in the PER to the parole board. Plaintiff claims that he did not attempt to explain the errors to the parole board because he was afraid that he would be viewed as not accepting responsibility for his actions. Plaintiff claims that as a result of Woodard's refusal to correct the PER, he was denied parole. When Plaintiff received the notice of decision from the parole board it stated that Plaintiff received poor block reports. Plaintiff asked Woodard for copies of the block reports, but Woodard refused on the ground that prisoners are not entitled to copies of their block reports. Plaintiff contends that, under MDOC policy, prisoners are entitled to all reports generated for a prisoner's file. Plaintiff maintains that Defendant Woodard fabricated the negative reports to hinder Plaintiff's chance of being granted parole.

Plaintiff received his next PER from Defendant Woodard on August 17, 2008. Again, the PER contained inaccurate information. Plaintiff claims that he tried to explain the errors during the parole interview, but Parole Board Member Lauren Thomas accused him of not accepting responsibility. The parole board subsequently denied Petitioner's parole.

For relief, Plaintiff seeks to be released on parole as soon as possible. He also requests monetary damages of five million dollars and an additional two million dollars for every

year that he is held beyond September 11, 2007, the date he originally was scheduled for release on parole.

### II. Parole revocation

Petitioner claims that his parole was improperly revoked and seeks release on parole. Petitioner's challenge to the revocation of his parole constitutes a challenge to the duration of his confinement. *See Dotson v. Wilkinson*, 300 F.3d 661, 665 (6th Cir. 2002) (distinguishing between challenge to the denial of parole and challenge to parole eligibility procedures). A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Dotson*, 300 F.3d at 665 ("Clearly, the decision to grant a prisoner parole affects the duration of that prisoner's sentence, and a challenge to the decision is not cognizable under § 1983."); *Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253 (c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)). Accordingly, Petitioner's claim challenging the revocation of his parole is dismissed without prejudice.

### III. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC must be dismissed from this action.

### IV. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544; 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard

requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Supervisory Liability**

Plaintiff fails to make specific factual allegations against Defendants Caruso, Berghuis, Bell, Rey, McRoberts and Deleeuw, other than his claim that they failed to conduct an investigation in response to his grievances and formal complaints. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575;

*Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to allege sufficiently that Defendants Caruso, Berghuis, Bell, Rey, McRoberts and Deleeuw engaged personally in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

B.     **Due Process**

1.     Termination of Phone Privileges

Plaintiff claims that Defendants Stewert and Goldberg violated his due process rights when they wrote NOIs to restrict his telephone privileges without first conducting a full and fair investigation. He further claims that his due process rights were violated when he did not receive a timely administrative hearing. An administrative hearing ultimately was held and allegedly resulted in Plaintiff's phone privileges being permanently restricted. Plaintiff's allegations raise issues of Fourteenth Amendment due process rights and First Amendment rights.

In order to state a federal procedural due process claim, Plaintiff must have a protected liberty or property interest in making telephone calls. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Several federal courts have held that prisoners have no liberty interest in telephone privileges. *See, e.g., Dumas v. Garnett*, No. 05-210, 2006 WL 149002, at *4 (S.D. Ill. Jan. 19, 2006) (inmates have no liberty interest in telephone privileges); *Rogers v. Justice*, No. 5:05-cv-65, 2005 WL 2860989, at *1 (E.D. Tex. Oct. 31, 2005) (loss of commissary, telephone and visiting privileges does not trigger due process protection); *Harmon v. Buss*, No. 3:05-cv-0060, 2005 WL 2045776, at *1 (N.D. Ind. Aug. 24, 2005) (loss of telephone privileges does not implicate a liberty interest);

*Tanney v. Boles*, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005) (inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical and significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process).

In this case, it is not necessary to rule on this question because even assuming that due process procedural guarantees apply to loss of phone privileges, they were satisfied in this case. Plaintiff received notice and an administrative hearing before his phone privileges were permanently restricted. While Plaintiff contends that the hearing was not held within the fourteen-day period provided under MDOC policy, the failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Plaintiff had notice and an opportunity to be heard on this issue before the complained of loss. Consequently, Plaintiff fails to state a due process claim.

Nor does the loss of phone privileges violate the First Amendment. Incarcerated prisoners retain First Amendment rights, but those rights necessarily are circumscribed because of the legitimate penological and administrative interests of the prison system. *See Turner v. Safley*, 482 U.S. 78, 89, (1987) (holding that limitations on prisoner constitutional rights are valid if reasonably related to legitimate penological interests); *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (restrictions on First Amendment rights are controlled by the principles of *Turner* ); *Valdez v.*

*Rosenbaum*, 302 F.3d 1039, 1048-49 (9th Cir. 2002) (same). In the First Amendment context "prisoners have no per se constitutional right to use a telephone." *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000); *see also Valdez*, 302 F.3d 1039 (holding that there is no First Amendment right to telephone access, instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a means of exercising this right"); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that "an inmate has no right to unlimited telephone use"); *Cook v. Hills*, 3 F. App'x 393, 394 (6th Cir. 2001) ( Prisoners have no constitutional right to make private telephone calls). Instead, "a prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution." *Arney v. Simmons*, 26 F. Supp.2d 1288, 1293 (D. Kan.1998) (citing *Washington*, 35 F.3d at 1100).

In determining the "reasonableness" of a particular penological limitation on First Amendment rights, a court considers the four factors articulated in *Turner*: (1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns. *Valdez*, 302 F.3d at 1048 (citing *Turner*, 482 U.S. at 89-90). Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment.

*Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989); *Turner*, 482 U.S. at 85; *Walker v. Mintzes*, 771 F.2d 920, 929-30 (6th Cir. 1985).

Prison officials have a strong penological interest in preventing prisoners from violating the law. It is undisputed that the PPO was in effect when Plaintiff made or attempted to make phone calls to his parents' residence. Plaintiff does not allege that he lacked notice of the PPO. The PPO was legally enforceable despite Petitioner's subjective belief that the order was obtained by false pretenses. Moreover, the fact that Plaintiff's mother continued to visit him in prison and accepted Plaintiff's phone calls after the PPO was entered did not render the order invalid or excuse Plaintiff's violation of the order. In light of Plaintiff's violations of the PPO, this Court will not second-guess the decision of prison officials to place him on permanent phone restriction. Moreover, with the exception of his parents, Plaintiff still can receive visitors and communicate with his family and friends through other means, such as written correspondence.

2. Parole Eligibility Reports

Plaintiff claims that he twice was denied parole as a result of false or inaccurate information that Defendant Woodard included in his PER and block reports. To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole

system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). The Michigan Supreme Court also has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Because Plaintiff has no liberty interest in being paroled, he cannot show that the alleged inaccurate information contained in the PER and block reports was relied upon to a constitutionally significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution.");

*Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, Plaintiff fails to state a due process claim against Defendant Woodard.

### 3. Misconduct Convictions

To the extent Petitioner challenges on due process grounds the major misconduct convictions that he incurred as a result of making or attempting to make phone calls to his parents, he fails to state a claim. The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the

relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).  Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983.  *Id.*; *see also Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007); *Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).

In *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected.  *Id.*; *Thomas*, 481 F.3d at 439; *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004).  The Court noted that "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation."  *Muhammad*, 540 U.S. at 754.  Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction.  *See* MICH. COMP. LAWS § 800.33.  In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.*  Plaintiff does not assert that he did not forfeit good-time credits for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction.  *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report

is received.  MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ DDD (effective Jan. 1, 2007).  Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court.  *See* MICH. COMP. LAWS  § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal).  If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[1]  Plaintiff does not allege that his misconduct convictions have been invalidated.  Accordingly, Plaintiff's § 1983 claim is not presently cognizable.  He therefore fails to state a claim on which relief can be granted.  *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

      C.    **Access to the courts**

Plaintiff alleges that Defendant Goldberg interfered with his right of access to the courts with regard to Plaintiff's proceedings to terminate the PPO.  Plaintiff attempted to serve the documents by putting them in envelopes marked "legal mail."  Plaintiff claims that Defendant Goldberg reviewed the mail in Plaintiff's presence.  Plaintiff showed Goldberg a letter from the clerk of the court instructing Plaintiff to serve the respondents.  Goldberg allegedly responded, "I don't care what the Court's have to say and will do whatever I want to."  (Compl., 11.)  According to Plaintiff, those legal documents never got served, which caused a delay in the proceedings.

---

[1] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).  A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief.  *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973).  However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts.  *See* 28 U.S.C. § 2254(b)(1).

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001)*; Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992). Furthermore, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff claims that Defendant Goldberg's conduct caused delay in Plaintiff's proceedings to terminate a PPO. Even assuming that the PPO proceeding, which is not a direct appeal, a habeas corpus action, or a civil rights action, can serve as a basis for an access to the courts claim, a mere delay in the proceedings does not by itself constitute actual injury. Plaintiff does not allege that the delay in service on the respondents caused him any actual prejudice or injury. *See Thomas v. Rochell*, 47 F. App'x 315, 318 (6th Cir. 2002). Indeed, a PPO that includes provisions no more onerous than the anticipated terms of Plaintiff's parole, would not seem injurious or even burdensome. Moreover, nothing in Plaintiff's allegations establish that any delay in the proceedings

forfeited, or even impaired, his ultimate ability to challenge the PPO. Plaintiff, therefore, fails to state a claim against Defendant Goldberg for denial of access to the courts.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, Plaintiff's claim challenging the revocation of his parole will be dismiss without prejudice. Plaintiff's remaining claims will be dismissed for failure to state a claim under to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   December 2, 2008             /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE